# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3384-16T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.L.,

     Defendant-Appellant,

and

S.L.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF D.L., a minor.

_____

Submitted October 23, 2018 – Decided  November 14, 2018

Before Judges Geiger and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0159-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Adrienne Kalosieh, Assistant Deputy Public Defender, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Joseph H. Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant A.L.[1] appeals from the Family Part's January 11, 2018 judgment of guardianship terminating his parental rights to his son, D.L., born in December 2012.[2]  Defendant contends that the Division of Child Protection and Permanency (Division) failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence.  The Law Guardian supports the termination on appeal as it did before the trial court.

---

[1]  Pursuant to Rule 1:38-3(d), we use initials and fictitious names to protect the confidentiality of the participants in these proceedings.

[2]  The child's mother, S.L., voluntarily surrendered her parental rights to her brother Aaron, the maternal uncle, for a second time on January 26, 2017, as more fully detailed in this opinion.  He also has custody of two of her other six children.  Therefore, S.L. is not a party to this appeal.

Based on our review of the record and applicable law, we are satisfied that the evidence in favor of the guardianship petition overwhelmingly supports the decision to terminate defendant's parental rights. Accordingly, we affirm substantially for the reasons set forth in Judge Bernadette N. DeCastro's comprehensive written decisions, and for the reasons stated in this opinion.

D.L. has been in the Division's custody since May 1, 2014, pursuant to a Dodd removal.[3] He was taken from his mother's care and hospitalized after his maternal aunt found him covered with bruises. S.L. and her boyfriend, who was cohabitating with her, were found unconscious from intoxication. Both were charged and incarcerated for child abuse and neglect. At the time, A.L. was incarcerated in Pennsylvania for a parole violation emanating from a driving while intoxicated charge.

Initially, the Division worked toward reunification with both parents. A.L. and S.L. have another child together, A.L., Jr., born in February 2011, who was in the custody of A.L.'s mother until he regained custody in August 2017. A.L. also has a daughter who has been in the custody of her maternal grandparents since she was nine months old.

---

[3] A Dodd removal is an emergent removal of a minor without a court order pursuant to N.J.S.A. 9:6-8.21 to -8.82, known as the Dodd Act. N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

A-3384-16T3

In July 2014, A.L. informed the Division that he was being transported to another facility due to his "psychiatric condition." Visitation with D.L. was sporadic, but resumed a few months later when A.L. was transferred to a halfway house in Pennsylvania. In January 2015, A.L. was admitted to NET Transitional House in Philadelphia to continue his recovery and rehabilitation. He exhibited inappropriate behavior and was medicated for obsessive-compulsive disorder and anxiety. D.L. was placed in his second resource home in March 2015. In April 2015, A.L. advised the court and Division that he wished to surrender his parental rights to D.L., and he refused visitation until November 2015. After two months of visits at the Division's office, he lost contact again from January 2015 until April 2016. In the meantime, A.L. was charged with a violation of probation after being charged with possession of a Controlled Dangerous Substance with intent to distribute.

Dr. Joel Nunez conducted a psychological evaluation of A.L. in December 2015 and confirmed those diagnoses, and also diagnosed A.L. with attention deficit hyperactivity disorder (ADHD). Dr. Nunez recommended supervised visitation, parenting skills courses, and substance abuse screening with treatment. In November 2015, A.L. admitted to caseworker Chrisann Josiah that he was involved in a new relationship, and his girlfriend did not want to deal

4

with the complicated issues regarding his children. Despite the recommendations, A.L. only attended mental health services infrequently. He failed to attend parenting classes at Kids First because he claimed he already completed the course. The next visit was not until April 2016 because A.L. did not want contact with the Division. He did not participate in the November 3, 2016 hearing. The child lived in a resource home until December 2016 when he was placed with Aaron, who wants to adopt him.

Dr. Larry Dumont was retained by the Division to perform a psychiatric evaluation of A.L. Dr. Dumont opined that A.L. had a "great deal of instability . . . [in his] living situation," and that he was not "fully able or capable of assuming the parenting mantle," noting that A.L. had good intentions, however, such intentions "do not necessarily indicate that the follow through will be optimal." The expert further cautioned that it would be "premature to have [A.L.] assume guardianship of his infant child"; and that it is "ironic and concerning" that A.L.'s mother has custody of A.L., Jr., but [A.L.] had not seen his son in seven months." A.L. told Dr. Dumont that "pain pills were his drug of choice." Thus, Dr. Dumont concluded that A.L. does not have "the most stable environment."

At the permanency hearing held on April 21, 2016, Judge DeCastro terminated parental rights, finding that the parents were incapable of caring for D.L. A month later, A.L. was advised to be hospitalized for opioid use but he refused.[4] He began counseling and parenting classes.

On August 2, 2016, A.L. was granted limited custodial rights of his older son by a Pennsylvania court. During a telephonic case management conference on September 8, 2016, A.L. advised Judge DeCastro that he had unsupervised parenting time with A.L., Jr. every Sunday.

A new caseworker, Alexandra Massaro, was assigned to this matter in September 2016. During a visit that month, A.L. complained to her that he wanted to end early because he was "psychic" and "had a sixth sense that his son was bored." A.L. expressed indifference about D.L. being in his care; simply wanted to "move on with [his] life"; and he grew tired of "coming up here for this."

The Division's expert psychologist, Dr. Gerard Figurelli, conducted a psychological evaluation of A.L. in October 2016 in order to evaluate his parenting ability. A.L. informed Dr. Figurelli that he had a history of bipolar disorder, "discrete episodes of depression," and being "hyper." Anger issues led

---

[4] A.L. was prescribed Suboxone for his opioid addiction.

to A.L. throwing things, and punching windows and brick walls. The evaluation revealed that, "A.L. lacks an understanding of the nature and severity of his psychiatric illnesses," and psychological testing showed he had a borderline personality trait with regard to his overall "organization and functioning of his personality."

A.L. did not participate in the November 3, 2016 hearing. Nonetheless, he retained Dr. Barry A. Katz to perform a psychological evaluation. Dr. Katz opined that A.L. has a "good understanding of child growth and development" and a "validity profile" that is "associated with a cry for help, and [an] individual who feels overwhelmed and is looking to call attention to themselves and their problems." Secondary problems were described by Dr. Katz as, "distrust, avoidant, and passive-aggressive behaviors," as well as "antisocial behaviors, narcissism . . . and alcohol dependence."

Prior to the January 19, 2017 guardianship trial, A.L. called Massaro a "liar" at a visit, and accused her of leaving him stranded in New Jersey after a visit. She testified that he appeared agitated, and he yelled at her, causing D.L. to become frightened and cling to her leg. D.L. repeated A.L.'s words that, "daddy was going to call the police on [Massaro]."

A-3384-16T3

Five witnesses, including two expert witnesses, testified during the three day trial. Judge DeCastro issued a written opinion on March 30, 2017, terminating A.L.'s parental rights and awarding guardianship of D.L. to the Division. The judge found Dr. Figurelli to be a credible witness, and Dr. Katz unreliable. Dr. Figurelli addressed A.L.'s problems with impulse control and aggression, which are not conducive to a stable home environment. Even A.L.'s own expert, Dr. Katz, opined that A.L. met the criteria for a schizoid personality disorder and exhibited symptoms associated with manic aspects of bipolar disorder along with lingering issues as to his parenting ability. In fact, Dr. Katz recommended that A.L. complete reunification therapy and submit to another evaluation prior to considering unsupervised visits.

Expert testimony established that removal from his resource parent, Aaron, would cause D.L. serious and enduring harm, while termination of A.L.'s parental rights would cause D.L. no harm. Dr. Katz never addressed D.L.'s need for permanency.

A.L. filed an appeal on April 18, 2017. Thereafter, a Pennsylvania court granted A.L. primary custody of A.L., Jr. on June 23, 2017, and sole legal and physical custody on August 15, 2017. This court denied A.L.'s appeal to vacate the March 30, 2017 judgment and remanded the matter to the trial court to

determine whether the change in custody of A.L., Jr. constituted newly discovered evidence under Rule 4:50-1. A hearing was held on this issue on November 4, 2017.

Due to a report filed by Pennsylvania Child Protective Services regarding safety violations, D.L. was removed from Aaron's home on October 16, 2017, and placed in a resource home in New Jersey. On November 14, 2017, the Division appealed to this court seeking a remand to ascertain if the removal impacted the trial court's analysis of prong four of the best interest standard and the request was granted. After a two-day remand hearing on this issue, Judge DeCastro vacated S.L.'s surrender of parental rights due to D.L.'s recent removal from Aaron's care and reinstated her as a party.

In a ten page written opinion dated January 11, 2018, the judge denied A.L.'s application to vacate her March 30, 2017 order terminating his parental rights and addressed the Division's remand issue. A.L. did not present any additional testimony at the first remand hearing, and only limited testimony at the second remand hearing. He simply relied upon the two Pennsylvania custody orders addressing custody of A.L., Jr., and the fact that D.L. was no longer residing with Aaron.

Judge DeCastro concluded:

Even if this [c]ourt finds that defendant met the first[]part of the test under R[ule] 4:50-1, defendant fails to meet the second part of the two-part test that it would be in the child's "best interest" to vacate the judgment. This [c]ourt finds to the contrary that it is not in the child's best interest to prolong his permanency until and if his father complies with services and demonstrates that he has benefited from them.

Both the Division and Law Guardian strongly opposed A.L.'s motion to vacate the judgment, arguing that the Pennsylvania record was incomplete, and A.L. had not demonstrated changed circumstances with regard to his inability to benefit from services. Thus, no additional evidence was presented regarding these issues. The judge further concluded:

As far as the changed circumstances by the removal of the child from his foster-parent and the impact it has on this [c]ourt's finding as to [p]rong [f]our, this court relies upon the testimony of Dr. Figurelli that D.L. needs permanency and cannot be reunified with [A.L.] now or in the foreseeable future because despite having made efforts to engage in services, the same issues remain to the impediments to obtaining custody, namely instability and incapacity to adequately and safely parent his son due to both psychiatric and personality disorders.

In her written opinions, Judge DeCastro reviewed the evidence presented and thereafter concluded that: (1) the Division had proven all four prongs of the best interest test by clear and convincing evidence, N.J.S.A. 30:4C-15.1(a); and

10

(2) termination of defendants' parental rights was in D.L.'s best interest. Relying upon In re J.N.H., 172 N.J 440, 474 (2002), the judge found that A.L. failed to meet the second part of the two-pronged test. The judge's analysis was correct.

In this appeal, our review of Judge DeCastro's decisions is limited. We defer to her expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 413 (1998), and we are bound by her factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). A.L. did not proffer any evidence he poses no harm to D.L., initially or at the remand hearings. Expert testimony established that A.L. would be unable to care for D.L., and that he had a paramount need for a permanent home with a capable parent. Further, Dr. Figurelli addressed A.L.'s lengthy history of mental health services.[5] For the

---

[5] A.L. participated in mental health treatment at NHS, in Pennsylvania, from age twelve to age thirty-two. He was treated for ADHD and bipolar disorder, and was provided individual psychotherapy and treatment with psychotropic medication. A.L. was hospitalized for thirty days at First Hospital of Wyoming in 2002, and at Mary Community Hospital from 2003 to 2004 for psychiatric services. He reported having "a lot on [his] mind" and needing to "get away" during a custody battle. He was also involved in mental health services from 2014 to September 2016 at Mary Howard Clinic.

A-3384-16T3

reasons stated by Judge DeCastro, we agree that termination of A.L.'s parental rights is in D.L.'s best interest.

"Inability to provide a stable and protective home" for children is highly relevant to whether a parent "can cease to inflict harm" on them. N.J. Div. of Youth and Family Servs. v. C.S., 367 N.J. Super. 76, 117, 118 (App. Div. 2004). Further, a key issue is whether the parent "can become fit to assume the parental role within time to meet the child's needs." N.J. Div. of Youth and Family Servs. v. L.J.D., 428 N.J. Super. 451, 479 (App. Div. 2012) (internal citations omitted).

A.L.'s continuing failure to provide D.L. with housing and his psychological inability to parent him, harmed D.L. by causing him to remain in foster care for several years. See N.J. Div. of Youth and Family Servs. v. R.G., 217 N.J. 527, 556-57 (2014) (citing In re Guardianship of K.H.O., 161 N.J. 337, 348-49 (1999)). A.L.'s other arguments do not warrant further discussion. R. 2:11-3(e)(1)(E).

After reviewing the record, we conclude that Judge DeCastro's factual findings are fully supported by the record and, in light of those facts, her legal conclusions are unassailable for the reasons that the judge expressed in her well-reasoned opinions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-3384-16T3